Good morning, Your Honors, and may it please the Court, Dale Ogden for Jermaine Johnson. I'll try to reserve two minutes of my time for rebuttal. I'll watch my clock. I think in many respects the government's arguments here boil down to the same error I think the district court made below, is that it's making credibility determinations against Mr. Johnson. They just don't believe him. They're allowed to proceed with those arguments, but they need to do that in the context of an evidentiary hearing, as this Court's decision in EARP makes clear. Is there a more preliminary question in this case, that is, whether there's a satisfactory exhaustion? Your Honor, the magistrate judge I think does a very good job of explaining why that would be excused here, because the military courts no longer allow habeas petitions at all. There's no jurisdiction there. Now, Mr. Johnson did go ahead and file in the Army Criminal Court of Appeals, because there's no courts martial, there's no trial court to go back to, because they're not standing courts. So he files in the Army Criminal Court of Appeals, and they dismiss it for lack of jurisdiction. So I would submit that both exhausts that claim and explains why any exhaustion would be excused here, because they don't consider those claims at all. So if it's – I guess the question is, are there any remedies left for him in the military courts? If we were to say, it's not exhausted, you need to go back and try to exhaust, or it's not exhausted because there's a remedy available. Are there any remedies available in the military courts? To my knowledge, there's no remedies left. Is that because the armed – it's ACCA, the armed – I can't remember. The Army Criminal Court of Appeals. Yes, I'm sorry. I apologize. I wasn't remembering the court name. They would just deny it for lack of jurisdiction? As they did here, that's correct. The only other thing that comes up in the case law is quorum nobis, but the problem is that requires you to have no other remedies available. And what the Army Criminal Court of Appeals said in gray, the case they cite, is that now it's for the federal courts to decide. So is the claim not still procedurally barred because he didn't raise it in direct appeal? No, Your Honors. I think – I don't know, and the government doesn't cite any requirement that he do that. A lot of claims, in particular at least, you know, another 2254, 2255, this court has explained that IAC claims are not often appropriate things to bring on direct appeal. Sometimes it's obvious from the record, and sometimes you know it at the time. But many times you're not going to know it until long after, as was at least the case with respect to the claim now. Well, it seems that both you and the government addressed this case on the merits, and your battle was over whether there should have been a hearing and whether the district court appropriately considered the merits of your client's claims, which I think is why we're asking so many questions about exhaustion and procedural bar because even if your client's claim is technically exhausted, it could still be procedurally barred. But I don't think the government argued that, and it's waivable. Correct. Procedural bars are affirmative defenses. Well, affirmative might be the wrong word, but they're things that the government has to raise or else they're either waived or forfeited. Let's assume for a moment, arguendo, that the government's latches, retroactivity, exhaustion, and procedural default issues all fail. You get to the merits here, there's just no there or there. I mean, you've got, from my perspective, your client had all the rights and explanation. There was nothing in there about where he was going to be incarcerated, and yet he says now years later after he personally repeatedly tried to get transferred that because he was that there's somehow an IAC claim. Isn't that absurd on its face? I don't think so, Your Honor. Buried in there, I think, is another credibility concern because I know Your Honor is referencing. In what sense? Well, I know Your Honor is referencing the November and December 2015 cop-out slips, and I think it would be a very different situation if that first one didn't exist. That first April slip explains that he is concerned that if he is transferred that he go near family. There's clearly something happening behind the scenes. I thought that was the later of the two. I believe that's the— I thought the later one you said, I forget which member of the family was ill. But the bottom line is he made at least two requests to my recollection in which he said, I want to be transferred to the BOP. I want to be. And he said specifically where he wanted to go. And yet now all these years later he's claiming that that's ineffective assistance of counsel when the issue of where he was going to be incarcerated wasn't even discussed when he was sentenced, and he's the one that initiated the transfer. How can that possibly give you a remedy on the merits aspects of this? I understand the court's concern. I think, again, that first read in context, there are three of those slips to Fort Leavenworth officials. The first one does say that he's concerned that if he were transferred he go near family, and that's what his contention below, of course he was brought to say below, that's what his contention below was. And to figure out the meaning of what's going on behind the scenes there I think does involve a credibility call. But maybe even more fundamental. With respect, counsel, why? I mean, he's blaming his lawyer for not anticipating something that was never discussed in terms of the fee bargain. Years later he says he wants to move, and he said that his lawyer didn't anticipate what he was going to do, and he's going to blame his lawyer. I mean, I've heard a lot of interesting IAC claims, but I've never heard one that's anything. This is what I would call a hootspot. This is really an unusual claim that he would blame his lawyer for what he did years later. Well, I understand it's a little more unusual. Two responses to Your Honor's question. One, at 2 ER 45 Mr. Johnson does explain that this was discussed with his counsel. Right, but didn't he say his counsel promised him it would never happen, he would serve all of his time in military prison, he wouldn't go to a federal prison, which is problematic because he also swore under oath at the plea colloquy that everything that was represented to him was in the plea colloquy. So he's adding something outside of what he swore to. He swears that nobody had made him promises. Now, I think I laid this out in the brief. Then he later says, but my counsel was ineffective because they promised me I wouldn't be transferred to federal prison. I just don't think that counsel's advice is a promise as we contemplate that question because this comes up in Rule 11 all the time is that have there been any promises made to you, that type of thing, and the client doesn't respond with all the advice that their attorney gave them, right? They don't respond with, well, my attorney explained how good time works. Here's that understanding. Sure, but if the client is going into the plea colloquy and believes that his counsel has told him, okay, here's what this agreement says, but don't worry about it because the judge is going to give you a variance or a departure and you're really not going to get this sentence. It's all good. I'm telling you that. They may not. I think that would be a promise. I mean, that would be something that would be germane to the person's decision, whether it's knowing and voluntary to enter the plea. And if they don't say that at the plea colloquy, then I think the sentencing judge is well within their rights to think this person understands this plea agreement. Well, I'm not saying that there's not attorney advice that could conceivably rise to the level of promise. I just think this is one of those background explanations, like when an attorney explains time credits or things like that or where they're going to go or prison placement requests, that that's the type of thing that I don't think we colloquially understand as being a promise. We have to carve out an exception from a sworn plea agreement. Somebody says an open court under oath. This is my agreement. I understand it. By the way, if there happens to have been a discussion with your lawyer about whether you're going to serve all your time in military prison or somewhere else, that part isn't under your oath. That's accepted because it's just not significant enough, but yet it's significant enough for his IAC claim. Well, I don't think it's a – I'm not asking for a carve out. I just think this is the type of thing that often happens outside of the record, as this court has made clear in other IAC contexts, because when you're talking about advice, these are things that usually happen between the attorney and their client. Do you want to save any of your time here? Sure, Your Honor. Thank you very much. Can I ask just one question? Of course. Are you essentially saying that for 2241s that challenge court martial prosecutions and convictions, that there is no exhaustion requirement because of the lack of jurisdiction in the military? I think at this point that is probably true because the courts refused to consider habeas at all. There was a time when they did consider habeas petitions. There's a lot of discussion in the case law about the All Writs Act and Article I courts and their jurisdiction to do those things. But if the courts are refusing to consider habeas at all, then there's no requirement to futilely exercise exhaustion. That's my question. Thank you. Thank you, Your Honor. All right, let's hear from the government. Mr. Robbins. Good morning. Good morning, Your Honors. May it please the Court. Alexander Robbins on behalf of the United States. The petitioner in this case committed a horrible murder. He left ample evidence of his crime, and he confessed to the crime almost immediately in a handwritten statement. The notion that he would have chosen to go to trial facing the death penalty and even life imprisonment on the lesser-included offense that he pleaded to versus taking a very lenient 30-year plea deal that was binding on the trial court that his lawyers obtained for him to the point where the trial court, apparently as an act of protest, sentenced him to 38 years, knowing it was going to be knocked back down to 30 years under the plea deal. The idea that he would have made a different decision because his lawyers didn't tell him that he might be transferred to civilian custody down the road if he repeatedly asked for it is, as the district court put it, palpably incredible. That's ultimately the focus, and I think that's Judge Smith's point. On the merits of this case, there is no there. Now, there's plenty of other procedural issues. We've raised, we've attempted to raise all of them because we think it's our job, too, to give the court as many options to dispose of this case as possible, but the district court's disposition was exactly correct. You argued in your briefing, latches, retroactivity, there's not a sixth amendment, right? You argued a number of, I don't want to demean them by calling them collateral, but they're not necessarily the merits that you're talking about right now. But what I didn't see you argue is procedural default, and the district court treated this as technically exhausted and did not find procedural default because the government didn't argue it. But then the petitioner lost on the merits. Are you disputing the way the district court approached this procedurally? No, Your Honor. The district court got it right.  We stand by all the procedural arguments we raised in our brief. We think those are alternate bases for this court to affirm the judgment below because ultimately this court can affirm on any ground that's supported by the record as a general rule of appellate practice. The exhaustion point is tricky because we agree that he couldn't exhaust through the habeas remedy in the military courts because he actually tried to. So he doesn't have a remedy. You agree he does not have a remedy in military courts. Well, at this point, his remedy, no, I guess I wouldn't agree with it if it's potentially that broad. And maybe this gets to a conditions of confinement issue versus a habeas issue. His remedy, if his Sixth Amendment or, sorry, his remedy, if any of his constitutional rights were violated in 2009 when he pleaded guilty, is a habeas petition 2241. In federal court? In federal court. That's true, and that's why we don't have that first footnote. We acknowledge that this isn't governed by EDPA or 2255 because of that issue, that that's the structure of this system. Would the government, as I read this, all of the government's, what I will call affirmative defenses, if all of them fail, it really doesn't matter because of the merits decision. Does the government really want us to go down the line on any of these other issues like exhaustion, procedural default, and so on? Does it really matter? No, Your Honor. Okay. We would be entirely happy and it would be entirely correct if this court affirmed for the same reason as the district court and the magistrate judge. So the government is fine if we just affirmed on the merits? We are giving the court as many bases as possible that are correct, which we see as our job, but absolutely the district court got it right. You can affirm just based on that. So you're opposing counsel. Excuse me for interrupting you. No, of course. So I understood his argument. He was saying that we should address the merits, but that the district court really failed because they didn't have an evidentiary hearing and made credibility determinations without hearing testimony or hearing from the petitioner. How do you respond to that?  Two pages, 117, 118, and 119 of the excerpts of record. One moment. 117 and 118 are the later two requests for a transfer. 119 is the original request for a transfer. All three of them in context are clearly requesting a transfer. Certainly the second two are. There doesn't seem to be any dispute about that anymore. My colleague just now said that, well, the one on page 119, the first request shows that he was, I think his word was, concerned about a transfer. That's just not true. Page 119 in the petitioner's own hand says, I can have a meeting with you to change my records to reflect where I will be going when I make parole. My family is in California from L.A. to Victorville. I would like to ensure that if I am transferred to FBOP that I go to the facility in Victorville somewhere else. He wasn't concerned about a transfer. He thought he was going to make parole and wanted to move to California sooner rather than later. And then on pages 118 and 119, he expressly asks for a transfer. And the district court found as a factual matter that he asked for a transfer. The district court was entitled to make that finding based on this paper record. It didn't need an evidentiary hearing. One way of reading the record is that he did not become concerned until he realized there was a two-year interval for considering parole in California and a one-year interval at Leavenworth. Is that true? And potentially, I don't think it makes a difference. That's an ambiguity that he, I guess, states in his reply brief, that he's back to the Army's parole jurisdiction instead of the BOP's parole jurisdiction. We don't have any separate independent knowledge of that other than what the petitioner reports in his reply brief. But ultimately, that doesn't matter. And this goes back a little bit to this question of what relief he's seeking. What I was going to say to Judge Beatty was that what complicates this case a little bit is that you have these various conditions of confinement, execution of sentence claims that are sort of being forced into the bucket of IAC back in 2008 in a way that makes them absurd. And whatever his complaints are, and that's why I said he may have remedies, if his complaint is the quality of dental care that he's receiving in the Bureau of Prisons facility or being housed with foreign nationals in violation of military law or the frequency of his parole hearings, right, we're not saying he has no remedy for that. Those are civil injunctive claims. He may have a remedy for that. We don't know. It's not relevant to this proceeding. This proceeding is he's saying all of that is why, back in 2009, I was denied my right to counsel. But bottom line, I gather, is the government is, in effect, saying this defendant doesn't satisfy either prong of Strickland. Correct. It clearly does not. It was no effective assistance of counsel or there was no prejudice, right? Correct. And that's why once you take all of his claims and put them in that sort of retrospective 2009 bucket, it's absurd. And the district court was well within its discretion, and I guess authority is a fact finder, to find that subjectively on this record, including the part I just read, Your Honors, that that's absurd. It didn't need an evidentiary hearing. The district court has discretion to dispose of these types of claims without an evidentiary hearing, particularly in context where, as we pointed out in our brief in footnote 8, that this is a collateral attack on a military proceeding is pretty much the courts normally give to state courts. We can't find any case that has issued a writ saying that the military court has denied full and fair consideration. Certainly it's not going to be this case. Unless the panel has questions? I think not. We ask that you affirm. Thank you, Your Honor. All right. So, Mr. Ogden, you have a little time left. Thank you, Your Honors. I'll be extremely short. Even assuming, arguendo, the transfer requests are what the government purports to say they are, again, it's the consequences of the transfer that Mr. Johnson is concerned with. And I think at the end of the day, the record could have been more developed, but the problem is Mr. Johnson was pro se below. He didn't have the benefit of counsel. This court appointed us on appeal. He didn't have the benefit of an evidentiary hearing. So we're just asking for that hearing. Okay. Thank you. Thank you, both counsel, for your argument. We appreciate it. The case of Johnson v. Rodriguez is submitted.
judges: SMITH, BADE, Fitzwater